IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02686-MSK-CBS

UNIVERSAL DRILLING CO., INC.;
JACK J. GRYNBERG; and
GRYNBERG OIL COMPANY,

        Plaintiffs,

v.

NEWPARK DRILLING FLUIDS, LLC,

        Defendant.
_____

**OPINION AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Newpark Drilling Fluids, LLC's ("Newpark") Amended Motion for Attorney's Fees **(# 38)**, the Plaintiffs' response **(# 46)**, and Newpark's reply **(# 47)**.[1]

The Court assumes the reader's familiarity with the proceedings to date, including the Court's factual and legal findings in its February 18, 2010 Order **(# 27)** granting Newpark's Motion for Summary Judgment. To the extent necessary, that Order is deemed incorporated

---

[1] Also pending is the Plaintiffs' Motion to Remand **(# 30)**. That motion was effectively mooted by the parties' settlement **(# 35)** of Newpark's Counterclaim, which leaves only the adjudication of the Motion for Attorney's Fees remaining in this case. Whether the Court treats the attorney's fee motion as a collateral matter that the Court retains jurisdiction to address notwithstanding the resolution of the parties' substantive claims, *see e.g. McKissick v. Yuen*, 618 F.3d 1177, 1196 (10th Cir. 2010), or whether it treats it as a "claim" closely related to the underlying dispute such that the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is appropriate, it is clear that the Court retains the authority to address the attorney's fee motion.

herein.

Newpark seeks an award of fees pursuant to C.R.S. § 13-17-102(4),[2] which provides that "the Court shall assess attorney fees if . . .if finds that an attorney or party brought or defendant an action . . . that lacked substantial justification," among other things. The term "lacked substantial justification" is defined by that same subsection as meaning "frivolous, substantially groundless, or substantially vexatious." Newpark contends that the entirety of its fees incurred in this action – a total of $ 79,187.50 – should be awarded to it.

The Plaintiffs contend that the action was not groundless, and that the action was brought "in good faith in a genuine dispute over billings by Newpark and how certain credits between the parties should be allocated." However, the Court notes that, as with the Plaintiffs' response to Newpark's summary judgment motion, the Plaintiffs have not produced or referred to any admissible evidence that would demonstrate their basis for this "good faith" belief that Newpark owed them money. Indeed, the Plaintiffs have not disputed Newpark's contention that the Plaintiffs' own records, produced in discovery, showed that the Plaintiffs actually believed they owed a small balance to Newpark.

Because the Plaintiffs have utterly failed, throughout this litigation, to come forward with any competent evidence that would demonstrate a basis for their alleged "good faith" belief in the claims they asserted, the Court finds that the Plaintiffs' claims against Newpark lacked substantial justification under C.R.S. § 13-17-102(4) from the inception of this action and that an

---

[2]Newpark's motion cites to C.R.S. § 13-17-201(4), a statutory provision that does not exist. The Court understands this to be a transpositional typographical error, and that Newpark intended to cite to § 13-17-102(4). The Plaintiffs' response to the motion, while sometimes referencing § 13-17-201, appears to nevertheless reflect the Plaintiffs' understanding that, in actuality, Newpark's motion was seeking relief under § 13-17-102. *See Docket* # 46 at 2.

award of the entirety of the reasonable fees incurred by Newpark in this action is appropriate.

The Court thus turns to the amount of fees to be awarded. In doing so, it applies the familiar "lodestar" analysis. *See generally Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"). In doing so, the Court makes an initial, or "lodestar," calculation by multiplying a reasonable hourly rate by the number of hours reasonably expended by the attorney(s) on the case. *Id.* at 802; *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Typically, the lodestar figure represents the appropriate amount of fees to be awarded; adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

Turning first to the hourly rate, Newpark has requested fees for four different attorneys, with hourly rates (as of 2010) of $ 230, $ 355, $ 540, and $ 650. The bulk of Newpark's billings were performed by Benjamin Vetter, an associate attorney billing at a rate of $ 355 per hour. The Plaintiffs have submitted an affidavit attesting to the fact that, according to an "informal survey" by the affiant, associates with experience comparable to Mr. Vetter typically bill at rates between $ 250 and $ 325 in the Denver legal market. The affidavit also establishes that, according to a survey by the Colorado Bar Association in 2008, the highest reported hourly rate for associate billing was $420. (That same survey concluded that the median billing rate for associates in firms with 30+ partners, as Mr. Vetter's firm has, was $250 per hour, with a rate of $ 318 per hour representing the 75th percentile of respondents.) From this evidence the Court concludes that Mr. Vetter's rate, while perhaps bumping up against the upper boundary of reasonable rates in the Denver market, is nevertheless within the range of reasonable hourly rates

charged in the Denver area.

The Court takes issue only with the hourly rate of $ 650, billed by Osborne Dykes, a partner in the firm. That sum far exceeds the maximum billing rate reported to the Colorado Bar Association's survey for partners in large firms (median rate of $ 400 per hour; 95th percentile rate of $ 541 per hour) and senior attorneys in "Of Counsel" roles (95th percentile rate of $595 per hour), as well as the $ 425 - 450 range cited by the Plaintiffs' affiant's "informal survey" of Denver-area lawyers. For the reasons below, the Court elects to reduce the entirety of the fees sought for work by Mr. Dykes, making it unnecessary for the Court to attempt to reduce Mr. Dykes' rate to a reasonable level. The Court finds that the remaining individuals for whom Newpark seeks fees report reasonable hourly rates.

The Court then turns to the amount of hours reasonably expended by Newpark's counsel in this litigation. Newpark seeks a total of 221 hours for the entirety of this litigation, with Mr. Vetter accounting for nearly 183 hours of that time. The Plaintiffs contend that this amount is excessive, but do not point to any particular billing entries that they contend are improper or unwarranted. Instead, the Plaintiffs offer only the general argument that "too many attorneys were involved . . . for the work to be completed in an efficient manner." The Plaintiffs point out that two separate offices of the firm were involved and that, in general, "whenever multiple professionals are involved in completing work on a lawsuit, there is inevitably overlapping of efforts, multiple interoffice communications, significant wasted time in educating each new professional about the case, and other redundancies."  The Plaintiffs contend that Newpark's billing entries "reflect significant charges for conferences between the attorneys, memos between the attorneys, and email and telephone conferences between the attorneys," but do not direct the

Court to any particular billing entry.

Although the Court accepts, in principle, the Plaintiffs' contention that the number of lawyers involved in a case increases the potential for inefficiencies and redundancies in billing, the Court cannot say that, in these circumstances, those inefficiencies or redundancies have been shown to exist. Although Newpark did staff the case with four attorneys, the vast majority of the time billed – more than 80% – was billed by Mr. Vetter alone, and the Court cannot say that the few remaining hours reflecting tasks that were delegated to other attorneys introduced unreasonable levels of inefficiency or redundancy, with one exception.

It appears that Mr. Vetter's work in this case was overseen by two supervisors, Mr. Dykes and Christopher Hart. In defending the reasonableness of the hours billed by each attorney, Newpark's reply brief explains that both attorneys provided "review and supervision" in the case. In doing so, Newpark lumps both men together, explaining that "Mr. Dykes and Mr. Hart communicated with the client, reviewed the scheduling order, the mandatory disclosures, revised and edited the summary judgment motion, reviewed the three different settlement offers, reviewed the opposition to Mr. Grynberg's motion to remand, reviewed the pre-trial order, and attended various court conferences." The reply brief does not differentiate between the functions each performed, nor explain why both Mr. Hart _and_ Mr. Dykes were required to perform these tasks. The Court lauds the economies that can be obtained by delegating the bulk of litigation responsibilities to associate attorneys, and recognizes that the limited oversight and guidance of more senior attorneys to provide supervision and review of such work may be appropriately billed as well. Here, however, there is no apparent justification for both Mr. Hart and Mr. Dykes to play what appear to be identical supervisory roles. Newpark acknowledges that Mr. Dykes'

time – a total of 3.25 hours billed over a three-year period – is "*de minimis*," raising the question of what, if any, material assistance Mr. Dykes' time contributed to this matter. Because the Court finds both that Mr. Dykes' hourly rate is unreasonable and that there is no apparent justification for the 3.25 hours claimed for Mr. Dykes, the Court declines to award any fees for Mr. Dykes' time.

In all other respects, however, the Plaintiffs have lodged no specific objections to the hours claimed by Newpark, and in the absence of such objections, the Court cannot say that a total of approximately 220 hours of attorney time billed in this case is unreasonable. The case entailed Newpark removing this action from state court; filing and amending its answer and drafting a counterclaim; preparing for and attending at scheduling, settlement, and pretrial conferences; reviewing of some 500 pages of discovery; preparing of a summary judgment motion and reply brief; responding to the Plaintiffs' motion to remand the case, negotiating and effecting a settlement of its counterclaim, and the preparing of the attorney's fee motion and reply brief. 220 hours of attorney time to complete these tasks does not strike this Court as beyond the realm of reasonable.

Accordingly, Newpark's Motion for Attorney's Fees **(# 38)** is **GRANTED**. The Court awards Newpark its fees in the amount of $ 77,125, to be reflected in the Judgment of this action,

6

which shall enter contemporaneously with this Order.  The Plaintiffs' Motion to Remand **(# 30)** is **DENIED AS MOOT**.

Dated this 22nd day of February, 2011

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge